# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

v.     Case No. 3:19cr2/MCR

**MICHAEL LEE DEPINE**
_____

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S
### MOTION FOR COMPASSIONATE RELEASE

Comes now, the United States of America, by and through the undersigned Assistant United States Attorney, and files this response to the defendant's motion for consideration of compassionate release. For the reasons set forth below, the Court should deny said motion as it is infirm.

### COURSE OF PROCEEDINGS AND STATEMENT OF FACTS

The facts of this case are generally set forth in the criminal complaint with affidavit, the indictment, the executed plea documents, the pre-sentence investigation report, and the judgment and statement of reasons. (ECF Nos. 1, 2, 11, 51, 52, 61, 71, 72). In sum, the defendant was engaged in a months' long illicit sexual relationship with a minor female of whom he also produced child pornography. (ECF Nos. 1, 2, 52, 61). This included the defendant communicating with the minor victim via social media platforms as well as surreptitiously picking

1

her up to bring her to the defendant's residence in the middle of the night for illicit sex acts.  (ECF Nos. 52, 61 at ¶¶19-37a).

A federal grand jury sitting in the Northern District of Florida indicted the defendant on multiple child sexual exploitation offenses.  (ECF No. 11).  The defendant pled guilty to the production and possession of child pornography.  (ECF Nos. 50, 51, 52).  The facts of this case are set forth in graphic detail in the pre-sentence investigation report (PSR), which the Court found to be complete, true, and accurate.  (ECF No. 61).  The defendant was sentenced to a total term of 216 months' imprisonment, a five year term of supervised release, and various fines, assessments, and the forfeiture of personal items.  (ECF No. 71).

Now, approximately 1½ years after the pronouncement of his 18 year sentence, the defendant moves for release from imprisonment.  (ECF No. 94).  For the following reasons, the Court should deny his request.

## LEGAL ARGUMENT

A. <u>Compassionate release</u>.

The relevant statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.---The court may not modify a term of imprisonment once it has been imposed except that---
>
> (1)  in any case---

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that---

(i) extraordinary and compelling reasons warrant such a reduction...

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582 (2018).

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Accordingly, the relevant policy statement of the Commission is binding on the Court. *United States v. Lynn*, 2019 WL 3805349, at *1-4 (S.D. Ala. 2019); *see also Dillon v. United States*, 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the Court).

The Sentencing Guidelines policy statement appears at § 1B1.13 and provides that the Court may grant release if "extraordinary and compelling reasons" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." That is, release is available where: (1) there are extraordinary and compelling reasons, and (2) the § 3553(a) factors, including whether the defendant is a danger to the community, show that release is warranted. U.S.S.G. § 1B1.13; *United States v. Chambliss,* 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Lisi*, 2020 WL 881994, at *3, 5-6 (S.D.N.Y. 2020); *United States v. Willis*, 382 F.Supp.3d 1185, 1187-89 (D.N.M. 2019).

Moreover, with regard to the first requirement, the Sentencing Commission has identified what may constitute "extraordinary and compelling reasons" as follows:

> 1. **Extraordinary and Compelling Reasons.---**Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   **Medical Condition of the Defendant.**---
>
> (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-

4

tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is---

(I)   suffering from a serious physical or medical condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   **Age of the Defendant.**---The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   **Family Circumstances.**---
(i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   **Other Reasons.**---As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1. For its part, consistent with note 1(D), the Bureau of

Prisons ("BOP") promulgated Program Statement 5050.50, available at


...

https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January 17, 2019, to set forth its evaluation criteria.

The defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Mattingly*, 2020 WL 974874, at *3 (W.D. Va. 2020); *Lisi*, 2020 WL 881994, at *3; *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. 2019); *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019); *see also United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case"); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) (a "party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue"). As the terminology in the statute shows, compassionate release is "rare" and "extraordinary." *White*, 378 F. Supp. 3d at 787; *accord Willis*, 382 F. Supp. 3d at 1188.

While this defendant asserts he suffers from obesity, type II diabetes, and high blood pressure and blood lipids, amongst other things, he has not offered any actual evidentiary materials to show the severity of his illnesses, let alone to establish that they, standing alone or combined with the COVID-19 pandemic, constitute a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not

expected to recover. (ECF No. 94 at pp. 1-2, 6).[1] A review of the defendant's recent BOP medical records (approximately the last ninety days) confirms that he is obese (slightly shy of being "severe" under CDC guidelines), with elevated blood pressure and lipids, as well as type II diabetes, and pulmonary and cardiovascular observations "Within Normal Limits." (*See* Government Exhibit A, attached hereto, at pp. 2, 4, 11, 13, 20, 30, 36). That is, the government concedes the defendant maintains these medical conditions, and they increase the risk for severe illness if COVID-19 is contracted, but the medical records suggest the defendant's conditions are currently being monitored by the BOP. In fact, his diagnoses are ones the District Court already knew about when sentencing him to a period of incarceration. (*See* ECF No. 61 at ¶¶77-78). The defendant's motion, which is replete with global

---

[1] Rather than attach medical records to his filing, the defendant provides a 1½ page "Medical Summary" prepared by a nurse practitioner who appears to have no specialized training/experience in virology, immunology, or infectious diseases. The government is aware this nurse practitioner is providing summaries for the Office of the Federal Public Defender, without meeting or physically examining defendants, at a rate of $150/hour. Indeed, a review of her current curriculum vitae does not provide for any specialty as noted above, and perhaps even more curious is that her publicly posted 2017 curriculum vitae states that her legal consulting/expert witness practice is in the field of "Medical Malpractice." This is why it is troubling that she opines about the defendant's risk for "contracting" COVID-19 based upon his medical ailments. (ECF No. 94-1 at p. 2). Though a person with certain conditions is certainly more at risk for severe illness upon getting the virus, the Centers for Disease Control and Prevention ("CDC") appears much less inclined than this nurse practitioner to suggest who may actually "contract" the virus. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

COVID-19 statistics, more appears to argue for a wholesale release of inmates from the Bureau of Prisons during the instant pandemic.[2]

The Court knows these health conditions are not so grave for the defendant that he was rendered unable to engage in a sexual relationship with a minor female while suffering their effects.  (*See* ECF Nos. 52, 61).  Though the above noted conditions increase the defendant's risks if infected, the defendant is not necessarily entitled to compassionate release as a matter of law.  *See e.g.; United States v. Hunter*, Case No. 4:17cr48/MW, Doc. 390 (N.D. Fla. May 1, 2020) (ruling that a defendant with asthma was not entitled to compassionate release where she "offered no evidentiary support for her assertion that her asthma, either standing alone or

---

[2]  In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.  The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.  On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities.  Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.  In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement.  On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement.  Under the CARES Act, enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP.  Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note).  On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution.  BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

combined with the Covid-19 pandemic is a 'serious medical condition that substantially diminishes her ability to provide self-care within the environment of a correctional facility and from which she is not expected to recover.'"); *United States v. Gileno*, 2020 WL 1307108, at *3-4 (D. Conn. 2020) (ruling that a defendant with asthma, a back injury, lifelong anxiety, high blood pressure, high cholesterol, and allergies had not demonstrated that his medical condition was such that he could no longer provide self-care and was not entitled to compassionate release); *Lisi*, 2020 WL 881994, at *4 (ruling that a defendant with chronic asthma; a maxillary cyst; chronic pain in his back, shoulders, and left arm; and chronic high blood pressure had not demonstrated that his medical condition was such that he could no longer provide self-care and was not entitled to compassionate release on that basis); *United States v. Clark*, 2019 WL 1052020, at *1, 3 (W.D.N.C. 2019) (ruling that a defendant who had diabetes, stage-3 kidney failure, and back issues requiring a walker had not demonstrated that his medical condition was such that he could no longer provide self-care and was not entitled to compassionate release).

Finally, even if the defendant is statutorily eligible for relief, the Court should only reduce his sentence if the § 3553(a) factors warrant doing so. U.S.S.G. § 1B1.13; *Chambliss*, 948 F.3d at 693-94; *Lisi*, 2020 WL 881994, at *3, 5-6 *Willis*, 382 F. Supp. 3d at 1187-89. For the reasons set forth below, the § 3553(a) factors show the Court should not modify the defendant's sentence.

With regard to § 3553(a)(1), the defendant possessed images and videos of child pornography, and this included those he personally produced of a minor who he was sexually exploiting. (ECF No. 61 at ¶¶ 29-37a). That is, the defendant, who is a grown man, was violating a minor female for his own pleasure. The nature and circumstances of this offense encompass extremely disturbing conduct, including deceit with regard to the victimization of a minor female, and § 3553(a)(1) weighs heavily in favor of not modifying the defendant's sentence. Providing just punishment to reflect the seriousness of the offense, and to afford adequate deterrence to criminal conduct, are highly important factors for a Court to consider when reviewing a compassionate release motion, just as they are when a Court imposes an original sentence. 18 U.S.C. §§ 3553(a)(1) & (2); *Chambliss*, 948 F.3d at 693-94; *Lisi*, 2020 WL 881994, at *3, 5-6; *Willis*, 382 F.Supp.3d at 1187-89.

With regard to § 3553(a)(2), the factors set forth in that subsection mirror the reasons traditionally recognized for imposing sentence: (a) retribution, (b) deterrence, *i.e.*, the need to deter others from committing like crimes, (c) incapacitation, sometimes referred to as specific deterrence, *i.e.*, the need to prevent the defendant from committing more crimes, and (d) rehabilitation. *United States v. Godfrey*, 22 F.3d 1048, 1058 (11th Cir. 1994). The Sentencing Reform Act of 1984 reflects that the least important of these four goals is rehabilitation. *United States v. Scroggins*, 880 F.2d 1204, 1207-08 (11th Cir. 1989). In the present case, given the

nature and circumstances of the defendant's disturbing criminal conduct, the need for retribution is significant. The Court should have an interest in deterring others, and protecting the public, from the sexual exploitation of children. In addition, the Court should have an interest in specifically deterring this defendant from engaging with the minor victim herein. As this Court is well aware, many of the defendant's actions involving the victim were conducted under the cover of darkness and out of the watchful eye of the victim's family. (ECF No. 42 at p. 4-5). Indeed, this very Court opined of the defendant's conduct, "[t]he determination and deceit involved in the commission of these offenses cannot be overstated." (*Id.* at p. 4). As such, both general and specific deterrence are of great import. Lastly, it would seem to shock the conscience of the public, rather than promote its respect, to release a hands on sexual offender less than two years into an eighteen year sentence.

With regard to §§ 3553(a)(3) and (4), the Court had the authority to sentence the defendant up to 216 months' imprisonment when it did so, and the Court would have that same authority if the defendant committed his crimes today. 18 U.S.C. §§2251(a), 2252A(a)(2), (a)(5)(B), (b)(1), and (b)(2). Indeed, this Court already provided the defendant some measure of compassion when pronouncing a sentence below the properly calculated guidelines range. (*See* ECF Nos. 71, 72). Moreover, he has served less than 15% of his sentence to date. With regard to § 3553(a)(5), the pertinent policy statement in the present case, U.S.S.G. 1B1.13, says to consider all

the § 3553(a) factors, and for the reasons set forth in this response, those factors show that the Court should not reduce the defendant's sentence.

For all of the above reasons, the Court should deny the defendant's motion for compassionate release.

<div style="text-align:right">

Respectfully submitted,

LAWRENCE KEEFE
United States Attorney

*/s/ David L. Goldberg*
David L. Goldberg
Assistant U.S. Attorney
Member of the Maryland Bar
21 East Garden Street, Suite 400
Pensacola, Florida 32502
(850) 444-4000

</div>

## CERTIFICATE OF COMPLIANCE WITH N.D. FLA. LOC. R. 7.1(F)

I hereby certify that this response complies with the word limitation set forth in N.D. Fla. Loc. R. 7.1(F). This response contains 3,120 words.

<div style="text-align:right">

*/s/ David L. Goldberg*
David L. Goldberg
Assistant U.S. Attorney

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed via CM/ECF and thus served on counsel of record, this the 30th day of December, 2020. The undersigned also certifies that the sealed exhibit, attached hereto, was provided to said counsel in advance of this filing.

*/s/ David L. Goldberg*
David L. Goldberg
Assistant U.S. Attorney