UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

vs.                                          Case Nos.:   3:19cr2/MCR/MAL
                                                          3:20cv5569/MCR/MAL
MICHAEL LEE DEPINE,
         Defendant.

_____

## REPORT AND RECOMMENDATION

On April 5, 2019, Michael Lee Depine, entered a negotiated plea of guilty to Counts 2 and 4 of a four-count indictment. ECF No. 51. He was sentenced to 216 months imprisonment on Count 2 (production of child pornography), and a concurrent 60 months on Count 4 (possession of child pornography), followed by 5 years of supervised release. ECF No. 71. In accordance with the negotiated plea, Count 1 (enticement of a minor) and Count 3 (receipt of child pornography) were dismissed at sentencing.

Depine filed a Motion to Vacate, Set Aside, or Correct Sentence under Title 28, United States Code, Section 2255. ECF No. 79. He contends that his defense counsel was ineffective for failing to raise an as-applied constitutional challenge to Count 2 and failing to advise him about the "purpose" requirement of Count 2.

Depine alleges that that had counsel provided competent assistance, he would not have entered a plea to Count 2. He asks that his sentence on Count 2 to be vacated, and that he be sentenced only on Count 4. ECF No. 79 at 34.

I recommend that Depine's motion be denied without an evidentiary hearing because Depine has not met his burden of showing that defense counsel was constitutionally ineffective. Depine cannot cite a single case where the as-applied constitutional challenge he claims counsel should have made was successful. Moreover, given the facts of Depine's case, the challenge would have failed. As to the "purpose" requirement of Count 2, Depine's understanding of the law is not correct. The purpose requirement is met if Depine used a minor to engage in sexually explicit conduct (such as lascivious exhibition of the genitals) for the purpose of producing a visual depiction of the conduct. The fact that the photographs were taken during a romantic relationship is not a viable defense. *See United States v. Miller*, 819 F.3d 1314, 1316 (11th Cir. 2016).

Depine also cannot show prejudice because he does not repudiate the plea bargain. Although Depine makes a general statement that he would have proceeded to trial, he ignores Counts 1 and 3, which were dismissed under the negotiated plea. For relief, Depine asks to be sentenced solely on Count 4 on the mistaken assumption

that he can maintain the dismissal of Counts 1 and 3. That relief is unavailable because Depine cannot keep the benefit of the plea bargain and simultaneously withdraw his plea. A decision by Depine to reject the benefits of the plea bargain and proceed to trial on all four counts would not be rational because of his almost certain conviction on all counts given the overwhelming evidence of guilt.

## I.     BACKGROUND

### A. Procedural History

On January 15, 2019, a federal grand jury charged Depine in a four-count indictment. The charges were:

Count 1:     enticing an individual under the age of 18 to engage in sexual activity for which any person can be charged with a criminal offense in violation of 18 U.S.C. § 2422(b), punishable by a minimum mandatory term of 10 years' imprisonment up to a maximum of life imprisonment

Count 2:     enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of 18 U.S.C. §§ 2251(a) and (e), punishable by a minimum mandatory term of 15 years' imprisonment up to a maximum of 30 years' imprisonment

Count 3:     receiving child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1); punishable by a minimum mandatory term of 5 years' imprisonment up to a maximum of 20 years' imprisonment

Count 4: possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), punishable by a maximum of 10 years' imprisonment

Represented by retained counsel David McGee, Esq., Depine secured a negotiated plea agreement pursuant to which he entered a plea of guilty to Counts 2 and 4, with Counts 1 and 3 to be dismissed at sentencing. ECF No. 51 at 1; ECF No. 82 at 89, 104.

Depine's Presentence Investigation Report (PSR) calculated his Total Offense Level at 40 and his Criminal History Category as I, yielding an applicable guidelines range of 292 to 365 months' imprisonment. ECF No. 61. The court sentenced Depine below that range to 216 months on Count 2, and 60 months on Count 4, to run concurrently, followed by 5 years of supervised release. ECF No. 82 at 105; ECF No. 72. Judgment was entered on July 9, 2019. ECF No. 71. Depine did not appeal, but filed a motion for compassionate release in May of 2020, which the court denied. ECF Nos. 73-78. Depine timely filed the instant § 2255 motion in June of 2020.

Depine raises two claims for relief in his motion, both related to Count 2. First, Depine claims counsel was ineffective for failing to move to dismiss Count 2 as unconstitutional as applied to him. ECF No. 79 at 8. Second, Depine contends counsel was ineffective for failing to advise him of the meaning of the word

"purpose" in § 2251(a). ECF No. 79 at 19-20. Had counsel done so, Depine insists he would have proceeded to trial. ECF No. 79 at 30-31. For relief, however, Depine does not seek to withdraw his plea and proceed to trial on all four counts of the indictment. Instead, Depine requests that the court "resentence the Defendant on Count Four (4), the only remaining Count on the indictment herein …." ECF No. 79 at 34.

The Government opposes Depine's motion in its entirety. ECF No. 85.

**B. Factual Background**[1]

In December of 2018, Homeland Security Investigations received three Cybertips from the National Center for Missing and Exploited Children referencing Facebook user accounts later determined to belong to Depine and S.B. PSR ¶ 19. Messages sent by Facebook Messenger indicated that Depine, who was 62 years old, and S.B., who was only 15 years old, were engaged in illicit sexual activity. PSR ¶¶ 20-25, 31. The messages included sexually explicit videos and still images of S.B. PSR ¶ 23.

---

[1] The facts set forth herein are primarily taken from the Presentence Investigation Report. ECF No. 61. Depine filed an objection disputing some of the factual matters. ECF No. 59. Those disputed matters were not included in this factual background.

Depine was identified and a federal search warrant issued. PSR ¶¶ 25-28. Law enforcement confirmed Depine had received and possessed sexually explicit photographs of S.B., some of which had been produced in Depine's bedroom. PSR ¶¶ 29-30.

After executing the warrant on January 4, 2019, law enforcement interviewed Depine at his place of employment, Navy Federal Credit Union. Depine admitted he had used his residence to engage in sex acts with S.B., including showering with her, engaging in oral sex, and digitally penetrating her. PSR ¶¶ 31, 32. Depine explained he would drive to pick up S.B., park a few blocks away and bring her to his residence after she snuck out of her bedroom window. PSR ¶ 31. Depine would also go into S.B.'s bedroom through her window after her grandparents were asleep. PSR ¶ 33. Depine had given S.B. gifts, including clothing and money through PayPal. PSR ¶ 32.

A forensic examination of Depine's seized digital media revealed multiple images and videos of child pornography involving S.B. PSR ¶ 33. This included images Depine had produced in his bedroom, saved in a certain folder on his computer with some images zoomed in and cropped on S.B.'s genitals. *Id.* The relationship was ongoing, as Depine had texted S.B. using terms of endearment as

recently as the early morning hours on the day of Depine's arrest. *Id.* Depine's three computers revealed internet bookmarks and a web browser history indicative of an interest in teens engaging in sexual acts. PSR ¶¶ 34-37. Sixteen images of child pornography, separate from the images of S.B., were recovered from unallocated space on his computer. PSR ¶ 37a.

S.B.'s written journal reflects she was the one to initiate "flirtatious" behavior with Depine after developing a crush on him. PSR ¶¶ 41-42; ECF No. 62-1. Although Depine engaged in sexual activity with S.B. (PSR ¶¶ 31-32), S.B. declined his requests to have intercourse. PSR ¶ 43; ECF No. 82 at 79-81. Depine admitted he needed to stop the relationship but could not find a way to say no. PSR ¶ 44. He and S.B. exchanged messages professing their love for one another. *Id.*

Depine timely entered a guilty plea and cooperated with law enforcement's investigation. PSR ¶ 45.

## II.    DISCUSSION

### A. Standard for Ineffective Assistance of Counsel

The Sixth Amendment right to counsel extends to the plea process. *Hill v, Lockhart*, 472 U.S. 52, 57 (1985). A guilty plea may be deemed involuntary, and

therefore withdrawn, if defense counsel fails to provide a defendant with reasonably effective assistance. *Id.* at 56-57.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish deficient performance by his lawyer and prejudice to the outcome of the case. *Id.* at 57. To establish deficient performance, a defendant must show that defense counsel's performance fell below the wide range of reasonably competent performance under prevailing professional standards. *Id.* To establish prejudice, a defendant must show that but for defense counsel's deficient performance, the outcome of the proceedings probably would have been different. *Id.*

In evaluating counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight . . . [and] a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Counsel's performance must be judged knowing that "in every case [a lawyer] could have done something more or different … [and that] omissions are inevitable." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To show deficient performance, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Id.* at 1315.

With regard to prejudice, a defendant who claims that ineffective assistance of counsel led him to involuntarily plead guilty will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Lafler*, 566 U.S. 156, 163 (2012). Such a defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *Diveroli v. United States,* 803 F.3d 1258, 1265 (defendant could not show it would have been rational to reject a plea agreement given its favorable terms and his near-certain conviction).

## B. Defendant's Claims

### 1. Failure to make an as-applied constitutional challenge

Depine claims counsel was constitutionally ineffective because counsel did not move to dismiss Count 2 of the indictment on the ground that the law against production of child pornography is unconstitutional as applied to him.

Count 2 charged that Depine:

did knowingly and intentionally use, persuade, induce and entice a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and this depiction was transported and transmitted in interstate and foreign commerce and produced using materials that had been shipped and transported in

> interstate and foreign commerce. In violation of Title 18 United States
> Code, Sections 2251(a) and 2251(e).

ECF No. 11 at 2. Depine claims counsel should have argued the facts of his case do not fall under the sphere of conduct Congress intended to proscribe by enacting § 2251(a), and the statute is unconstitutional as applied to him. ECF No. 90 at 5. Depine contends had counsel properly advised him about the availability of an as-applied constitutional challenge, he "would have insisted that trial counsel file same and proceeded to trial." ECF No. 90 at 7. This claim must be denied because defense counsel was not ineffective. Depine's as-applied challenge is based on a misreading of the law and thus the challenge would not have been successful.

The Eleventh Circuit has repeatedly held that Congress may regulate the purely intrastate production of child pornography. *United States v. Culver,* 598 F.3d 740 (11th Cir. 2010) (Section 2251(a); *United States v. Maxwell*, 446 F.3d 1210 (11th Cir. 2006) (Section 2251A); *United States v. Smith*, 459 F.3d 1276, 1284-85 (11th Cir. 2006) (Section 2251(a); *see Gonzalez v. Raich*, 545 U.S. 1 (2005) (holding Commerce Clause grants Congress power to regulate purely local activities with substantial effect on interstate commerce). Depine does not dispute that an as applied Commerce Clause challenge to § 2251(a) would fail. ECF No. 79 at 10-13; ECF No. 90 at 4. Instead, Depine argues that his production of the illicit photos of 15-year-

old S.B. were not within the sphere of activity Congress intended to regulate because he did not intend to circulate or trade the images and because he had a relationship with S.B. ECF No. 90 at 5.

As the basis for his claim, Depine relies on a non-binding First Circuit case, *United States v. Morales-de Jesus*, 372 F.3d 6 (1st Cir. 2004). In *Morales*, a jury convicted the defendant of violating § 2251(a) after he videotaped sex acts between himself and his 13-year-old goddaughter. Morales made an argument that § 2251(a) did not apply to him because he did not purchase, trade, sell or barter the pornography, and he had no intention of doing so. The First Circuit rejected the argument. *Id.* at 18. Depine relies on the following dicta from the First Circuit's opinion:

> However, there are as-applied challenges that might focus on facts other than the economic facts of the particular case. These facts could include the age of the minor, the relationship between the defendant and the minor, the nature of the allegedly sexually explicit conduct, and the nature of the visual depiction of that conduct. In a given prosecution, some of these facts could raise constitutional privacy concerns[] or concerns that the conduct at issue, although covered by the language of the statute, was not within the sphere of activity identified by Congress as the basis for its exercise of power under the Commerce Clause.

*Morales-de Jesus*, 372 F.3d at 18 (footnote omitted). Depine asserts that this language sets forth the exact challenge he would have raised, had he been advised

of its availability, and it is "probable that this challenge would have been successful given the nature and circumstances of [his] alleged conduct." ECF No. 90 at 6.

Depine attempts to distinguish his conduct from that engaged in by the defendant in *Morales*, in that S.B. was 15 years old rather than 13 and was not his goddaughter, but rather the granddaughter of a close friend. ECF No. 79 at 15. Depine purports to recognize that a minor cannot consent to sexual contact with an adult male. He nonetheless recites a lengthy passage from S.B.'s journal which he describes as S.B. writing of her "intentions of seducing" him, ECF No. 79 at 15-16 (citing ECF No. 62-1 at 1), as though the passage can somehow absolve his culpability.

Depine denies having set out to record his encounters with S.B. Rather, he asserts, it was solely S.B.'s intention to have him take pictures with her camera for "her enjoyment." ECF No. 79 at 18. Depine emphasizes he never recorded images or videos on his personal camera or phone, S.B. maintained possession of the camera and photos, and he never asked her to send the photos to him, whether expressly or implicitly. *Id.* Depine distinguishes his conduct from that of individuals who intentionally seek to sexually exploit a child for the purpose of memorializing the exploitation with pictures or videos and who would potentially trade or sell the

depictions. *Id.* The browsing history of Depine's computer as well as the child pornography discovered on his computer show that he knew pornography involving minors was available on the internet. Depine notes, however, that he did not initiate the interaction to record images and that he did not intend to share the photos he took of S.B. Nothing about these circumstances places Depine's conduct in the realm of constitutionally protected privacy.

Depine also cites the following comments made by Magistrate Judge Charles Kahn Jr. at his detention hearing: "This defendant is not a habitual pornographer, is not a habitual child abuser, nor is he an aggressive person. As I mentioned before,[2] he has no criminal history." ECF No. 41 at 80. Whether Depine had a demonstrable habit of producing or viewing child pornography, however, is not dispositive of the question of his culpability in this case.

In its response, the Government rebuts Depine's attempts to portray himself as the "victim of an unrelenting fifteen-year-old seductress" and argues Depine has mischaracterized the evidence now, ECF No. 85 at 8, as he did at the detention

---

[2] The court had previously noted "[the offense conduct] was an occurrence that had no precedent in this man's life." ECF No. 41 at 80. Clearly the court had not been presented with evidence of the browser history of Depine's computer, showing extensive searches for teen pornography and 16 images of minors other than S.B. that were under the age of 12. ECF No. 61, PSR ¶ ¶ 35, 36, 37, 37a.

hearing. *See* ECF No. 40-1. The Government notes that during an undated interview with law enforcement, S.B. said that she and Depine were looking at one of his magazines or erotic photography type books together and she wanted to reenact some of the pictures, so she posed and Depine took pictures. ECF No. 62-2 at 3. The Facebook communications between Depine and S.B. reveal it was Depine who later suggested S.B. bring her "nice camera" for a photo shoot on November 11, 2018, and he mentioned her bringing her camera again on November 14 and December 14, 2018. ECF No. 85-1 at 2, 3, 6. Depine also made graphic and sexually explicit comments to S.B. on November 13, 2018. ECF No. 61, PSR ¶ 21. The following day S.B. sent him 11 images, to which he responded "Oh my goodness! What a pleasant surprise!!! Thank You! (emoticon smiley face)." *Id.* He continued to make overtly sexual statements to S.B. thereafter. He tried to convince her to agree to have intercourse on November 15, 2018, asking if he should bring a condom or two and when S.B. told him "no penetration" promising to "be as gentle as I can" and to "use lots of KY so it won't hurt." ECF No. 85-1 at 4. On November 26, 2018, Depine told S.B. that he knew "a much better way to help [her] fall asleep; wild passionate sex with a satisfying orgasm." ECF No. 85-1 at 5. These comments, while not dispositive

of Depine's guilt on Count 2, show Depine cultivated the sexual relationship with S.B. Rather than being a victim, he accepted and encouraged S.B.

Depine's position appears to be that sexually explicit photographs taken within a consensual relationship between an adult and a minor should be immune from regulation by the federal child pornography laws because of privacy concerns. This position has not been adopted by any court. His suggestion that the dicta in *Morales* offers him some relief is unsupported. The First Circuit has since recognized that even if there are some facts under which there could be a viable as-applied challenge to the statute, the doorway to such a challenge "may be an increasingly narrow one" after *Raich. See Ortiz-Graulau*, 756 F.3d at 22, and n7.[3] Furthermore, this was not a situation where Defendant and the minor victim were legally married so as to fall within the sphere of a recognized privacy interest. *See Ortiz-Graulau*, (rejecting similar argument).[4] There was a 47-year age difference

_____

[3] There are cases which upheld as applied challenges before *Raich,* but they are no longer good law. *See, e.g., United States v. Corp,* 236 F.3d 325, 332 (6th Cir. 2001) (finding defendant had no intent to distribute images taken of a 17-year-old girl, shortly before her 18th birthday, engaging in consensual sexual activity with the defendant's 26-year old wife and no exploitation), *overruling recognized by United States v. Bowers*, 594 F.3d 522, 523.(6th Cir. 2010); *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003) (finding single picture of intoxicated mother alongside 10-year-old daughter, both with genitals exposed, was purely intrastate possession that could not be regulated under the Commerce Clause), *overruling recognized by United States v. Bremner*, 841 F. App'x 33 (9th Cir. 2021).

[4] The court in *Ortiz-Graulau* also noted that even if the minor was seemingly willingly engaged

between Depine and S.B., and S.B. was over 2 years from reaching the age of consent. As stated in *Ortiz-Graulau*, "[t]he elements of § 2251(a) were met by Depine's intentionally taking sexually explicit photographs of [a] person he knew was a minor." *Id.* at 22.

Given the applicable law, counsel was not constitutionally ineffective for failing to advise Depine that he had an available as-applied challenge because there was no winnable as-applied challenge to raise. Depine cannot show that no reasonable defense counsel would have acted in the same way as his did. Therefore, Depine cannot show deficient performance and he is not entitled to relief on this ground.

### 2. Failure to Advise on the Meaning of "Purpose"

In Depine's second ground for relief, he contends counsel was ineffective for failing to advise him about the meaning of "purpose" as used in § 2251(a). Depine claims counsel should have recognized from a plain reading of the statute that the element of "purpose" was missing from his conduct and counsel should not have recommended he enter a guilty plea.

---

in a relationship with an adult, the photographs taken "are not a full measure of the harm done to [the minor's] life by [defendant's] drawing her into the relationship." *Ortiz-Graulau*, 756 F.3d at 22.

The Statement of Facts in support of the plea set forth the following three elements of the offense the Government needed to prove beyond a reasonable doubt:

1. an actual minor, that is, a real person less than 18 years old, was depicted;
2. the Defendant employed or used or induced the minor to engage in sexually explicit conduct *for the purpose of* producing a visual depiction of the conduct (e.g.—masturbation, lascivious exhibition of the genitals or pubic area, or other sexual acts); and
3. the visual depiction was produced using materials that had been mailed, shipped or transported in interstate or foreign commerce by any means.

ECF No. 52 at 5 (emphasis added). Neither the first nor third elements are at issue here. Rather, Depine argues his conduct is not encompassed by the phrase "for the purpose of." He claims if counsel had explained the meaning of this phrase, he would not have pleaded guilty but would have proceeded to trial.

The Government has not submitted an affidavit from former defense counsel to shed light on any conversations between Depine and counsel on this issue. However, the plea colloquy is instructive.

i. The plea colloquy

During the plea colloquy, Depine told the court there was a lot he did not fully understand about the charge, although he stated, twice, that counsel had explained the statute to him. ECF No. 81 at 14. Depine noted the incongruity between his conduct, which he described as "just a couple of kids having fun," and that of

individuals who produce thousands of pictures and distribute and sell them on the internet, and he said he did not understand how his charge could be "lumped in" with the conduct of people producing child pornography for commercial gain. *Id.* The court advised him that "if there's something factual about your case that you or [your lawyer] believes excepts you from that charge, then you shouldn't be pleading guilty." *Id.* at 15. Depine was told that for the court to accept his guilty plea, he would "have to admit the facts that support the charge." *Id.* Irrespective of Depine's feelings about the breadth of conduct covered by the statute, Depine told the court counsel had "been very thorough in answering all my questions. And his whole entire firm has done an outstanding job representing me." *Id.* The court again reminded Depine that its concern was "whether the plea is valid under the law as the law exists."   *Id.* at 15.

When the court discussed the statement of facts, Depine briefly consulted with counsel. The court asked if he had any questions, or he needed to "speak to Mr. McGee any further about the terms 'employed, used or induced.'" ECF No. 81 at 26. The court did not mention the phrase "for the purpose of." Depine responded counsel had clarified the question he had. *Id.* Counsel assured the court he had discussed the legal elements of each offense in depth with his client on more than one occasion,

and Depine did not contradict counsel's statement. *Id.* at 27. Depine reread the statement of facts before agreeing he had committed the acts outlined in the document, although stating "there's a lot of extenuating circumstances." *Id*. The court advised him that he could argue the extenuating circumstances at sentencing, but they would not affect his plea. *Id.* at 27-28. Depine was advised if he entered a guilty plea, he would be waiving all defenses he might otherwise have to the charges and giving up his right to appeal any issue related to his guilt. *Id.* at 30-31. He acknowledged he understood his rights, and he proceeded to enter a guilty plea. *Id.* at 31, 36.

The Government argues that Depine's statements at his rearraignment defeat his claim because they show he was fully advised by counsel before entering a voluntary, intelligent, and knowing plea. A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citing *Blackledge*). In this case, the district court found Depine understood the nature of the charges against him, the facts Depine had admitted under oath were sufficient to support a finding of guilt, and he had had the assistance

of competent counsel with whom he was "well-satisfied." ECF No. 81at 34-35.

The plea colloquy does not support Depine's claim that he was not advised of the elements of the statute.

### ii. "Purpose" as meant in § 2251

Assuming for sake of argument counsel did not explain the elements of the statute to Depine, or more specifically the "purpose" requirement, to prevail on his claim, Depine must show it would have been rational for him to reject the plea negotiated by counsel and proceed to trial. Had Depine proceeded to trial, he of course would have had to defend against all four charges. The focus for the moment is Count 2.

In the Eleventh Circuit, to secure a conviction under § 2251(a), the Government must "prove beyond a reasonable doubt that *one purpose* of the sexually explicit conduct was to produce a visual depiction." *United States v. Lebowitz*, 676 F. 3d 1000, 1013 (11th Cir. 2012) (emphasis added). The Government does not have to prove the production of a depiction was the only, or even the "dominant," motive for the sexual contact. *Id.* at 1013-1015. This is because "dual purposes are sufficient for a conviction, and [courts] 'need not concern [them]selves' with whether the illegal purpose was dominant over other purposes." *United States v. Hughes,*798 F.

App'x 388, 391 (11th Cir. 2019). An argument that "visual depictions were incidental to a consensual romantic relationship with a minor is not a viable defense to a charge under § 2251(a)." *Hughes*, 798 F. App'x at 391 (citing *United States v. Miller*, 819 F.3d 1314, 1316 (11th Cir. 2016)). Whether "some other sexual encounter would have occurred even without recording equipment is irrelevant." *Lebowitz*, 676 F.3d at 1013.

Cases considering the question of "for the purpose of" are fact specific. In *United States v. Wardlow*, the defendant was convicted after a jury trial of violating § 2251(a). *Wardlow*, 666 F. App'x 861 (11th Cir. 2016). On appeal he admitted having taken pornographic pictures of the minor victim during sexual encounters with her, but he argued he was in a romantic relationship with the minor, and the photos were merely incidental to that relationship. *Id.* at 863. The Eleventh Circuit found, viewing the evidence in the light most favorable to the Government, that defendant induced the minor to engage in certain sexually explicit conduct for the purpose of producing the pornographic pictures. *Id.* The minor in *Wardlow* testified that the defendant made her lie down while the defendant focused on her genital area and took the pictures. *Id.* The key issue thus was defendant's purpose in having the minor engage in the particular conduct that resulted in the photos, rather than

defendant's purpose in engaging in the relationship as a whole. *See also, Ortiz-Graulau*, 526 F.3d at 19 (finding that the number of photographs defendant took of the minor, many of sexually explicit poses, permitted "a strong inference that *some of the conduct occurred in order to make the photographs*" despite defendant's claim of a "marital-like" relationship with the minor) (emphasis added).

The law of other circuits is, of course, not controlling, but can be instructive. For instance, the District of Columbia Circuit held that the "purpose" element is not proven by the mere fact that a defendant personally took a photo of a minor engaged in sexually explicit conduct. *United States v. Torres*, 894 F.3d 305, 312 (D.C. Cir. 2018). In *Torres*, unlike in the Eleventh Circuit, the Government conceded for the sake of argument on appeal that it must show the purpose of producing a visual image was a defendant's "*dominant* motive for using, inducing or coercing a minor's sexual conduct." *Id. (emphasis added).* In that case, the court found the jury could have considered as circumstantial evidence of "purpose" evidence that defendant manipulated the minor's genitals for the photo, lied to the victim about having deleted the photos, and later posted one of the pictures on Facebook. *Id.* at 312-313. Other circumstantial evidence of "purpose" as used in § 2251(a) might include a defendant's "specific instructions regarding certain positions [the defendant] wanted

[the minor] to assume relative to the camera." *Morales–De Jesús*, 372 F.3d at 21.

The Fourth Circuit has distinguished a situation where a defendant engaged in sexual activity with a minor over many months *and* took a picture from a situation where the individual engaged in sexual activity *to* take a picture. *See United States v. Palomino-Coronado*, 805 F.3d 127, 132 (4th Cir. 2015). In *Palomino-Coronado*, defendant engaged in sexual activity with the minor on more than one occasion, had taken several non-sexually explicit pictures of her and only one sexually explicit photograph that was subsequently deleted. *Id.* at 132. The court noted there was no testimony that defendant gave any instruction or direction to the minor as part of their sexual encounter that would indicate "purpose." *Id*. It also declined to find that the mere use of defendant's cell phone could support a finding of purpose because "cell phones are now ubiquitous." *Id.* at 133. The Fourth Circuit overturned defendant's conviction, finding the Government had not adduced sufficient evidence to show defendant "acted for the purpose of producing a visual depiction." *Id.* The Government notes that Palomino is the only reported case where the § 2251 conviction was overturned. *C.f. United States v Crandon*, 173 F.3d 122 (3rd Cir. 1999) (holding for purposes of application of U.S.S.G. § 2G2.2, where defendant took nearly fifty pictures of the minor and only two were sexual, district court should

have made some inquiry into defendant's purpose, motivation, or intent to assess applicability of guidelines).

The takeaway from these precedents is that the law does not favor Depine's understanding of the purpose requirement. Instead of supporting Depine's proposed defense to Count 2, reasonable defense counsel would have clarified to Depine that circumstantial evidence could be used to determine whether some of the sexual conduct between Depine and S.B., such as the lascivious exhibition of her genitals, occurred for the purpose of taking the photographs. Counsel would have also explained that dual purposes are sufficient for a conviction. *United States v. Lebowitz*, 676 F.3d at 1014.

### iii.   Rejection of the plea bargain

Whether it would have been "rational" for Depine to reject the plea agreement in this case depends largely on the strength of the Government's evidence against him. *Diveroli*, 803 F.3d at 1265. Depine bases his position that, had counsel explained the meaning of "purpose" he would have proceeded to trial, on his belief that he could have evaded conviction on Count 2. Depine maintains there was no evidence that would support a finding that the photographs and videos of S.B. were Depine's "purpose" for engaging in the sexual relationship. ECF No. 79 at 26. As

explained above, Depine's focus on the purpose of the entire illicit relationship rather than his conduct at the time he took the photos and in taking the photos is a misguided interpretation of the law. *See Wardlow; Ortiz-Graulau*, *supra.*

Depine also suggests he would not have been convicted because the depictions were the result of S.B.'s independent request that he take pictures of her. That S.B. first initiated the "reenacting" of the photos she and Depine were looking at in his erotic books is supported by the transcript of S.B.'s journal and testimony at the detention hearing. ECF No. 79 at 23; ECF No. 41 at 28-30. However, the fact that Depine did not "coerce" or "threaten" S.B. to pose for the lascivious photos is irrelevant. Force is not an element of § 2251(a), and minors are legally incapable of giving consent to unlawful sexual conduct. *See, e.g., Wardlow*, 666 F. App'x at 864. The Government did not need to prove that Depine "caused" S.B. to engage in the conduct he photographed. *United States v. Wright*, 774 F. 3d 1085, 1091 (6th Cir. 2014). That the conduct occurred in order to make the photos is sufficient to violate the statute. *See Ortiz-Graulau*, 526 F. 3d at 18 (holding that "the statutory definition of 'use' is met when a defendant makes a minor the subject of a visual depiction by intentionally photographing the minor engaging in sexually explicit conduct"); *United States v. Sirois*, 87 F. 3d 34, 41 (2d Cir. 1996) (holding that the "use" element

of § 2251 is satisfied if the child is photographed in order to create pornography); *United States v. McCloud*, 590 F.3d 560, 566 (8th Cir. 2009) (holding "[a] defendant 'uses' a minor for purposes of § 2251(a) if he photographs the minor engaging in sexually explicit conduct to create a visual depiction of such conduct."); *United States v. Engle*, 676 F. 3d 405, 419 n. 9 (4th Cir. 2012) (following *McCloud*); *United States v. Wright*, 774 F.3d 1085, 1089-91 (6th Cir. 2014) (rejecting Defendant's claims that (1) § 2251 did not apply because the minor initiated the nude photo sessions and (2) the Government was required to prove active or coercive conduct).

Depine also suggests he was not guilty because he did not immediately retain the photos, he did not ask for the photos, and he had no intent to disseminate them. ECF No. 79 at 26; ECF No. 41 at 65 (quoting Depine's reaction as being one of surprise when S.B. forwarded him the pictures). The offense prohibited by § 2251(a) is the production of child pornography, nothing more. *See United States v. Grzybowicz*, 747 F. 3d 1296, 1307 (11th Cir. 2014) (noting that distribution is not an element of § 2251(a)). As the Supreme Court has stated, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child" and the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v.*

*Ferber*, 458 U.S. 747, 757, 58 (1982). Whether sexually explicit photos are taken for a commercial purpose is irrelevant to their illegality. *United States v. Ruggiero*, 791 F. 3d 1281, 1288-89 (11th Cir. 2015) (finding Congress intended § 2251(a) to reach non-commercial producers of child pornography).

Depine reiterates there was nothing in the Facebook messages he exchanged with S.B. indicting he wanted to take photos or videos of her. ECF No. 79 at 25. For instance, he asserts he did not ask S.B. to bring her camera to their rendezvous until November 11, 2018, which he says was after the October 28, 2018, meeting where the photos that were the subject of this indictment were taken. ECF No. 90 at 14-15; ECF No. 62-2 at 3-4. This argument is unconvincing because Depine does not, and cannot, deny that he took the photos of S.B. in his bedroom to "recreate" the erotic images they were viewing. Moreover, the fact that Depine specifically asked S.B. to bring her camera for another photo shoot later rebuts his claim that he did not want the first one.

In sum, Defendant's insistence that he has shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Hill*, 474 U.S. at 59, is based on a misunderstanding of the proof required under the law. His assertion that he did not engage in the illicit

sexual relationship with S.B. for the purpose of taking pornographic pictures may be true. Nonetheless, as set forth above, this truth does not absolve Depine of liability under the statute. The facts that could have been introduced into evidence would have supported Depine's conviction on Count 2 of the indictment.

Under the circumstances of this case, I find that it would not have been rational for Depine to reject the plea bargain. *See Diveroli*, 803 F. 3d at 1264-65. By accepting the Government's plea bargain, Depine benefitted from a significantly reduced sentence. He escaped a potential life sentence on Count 1, and he had a significantly lower advisory guideline range because of the acceptance of responsibility adjustment and the grouping of two rather than potentially four counts of conviction. *See* ECF No. 61, PSR ¶¶ 48-59.

Depine himself seems to recognize the benefit of the plea bargain because for relief he does not ask to go to trial on all four counts of the indictment. Instead, Depine asks the court to "vacate the Defendant's conviction and resentence the Defendant on Count Four (4) the only remaining Count on the Indictment herein, for the reasons and upon the authority cited hereinabove." ECF No. 79 at 34. This relief is unavailable.

### III.  Conclusion

An evidentiary hearing is not necessary to resolve Depine's claims because "the motion and files and records conclusively show that [Depine] is entitled to no relief." 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877. For the foregoing reasons, I find that Depine has not shown that the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Therefore, his motion should be denied in its entirety.

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The motion to vacate, set aside, or correct sentence (ECF No. 79) be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Gainesville Florida on August 21, 2023.


                                   s/ *Midori A. Lowry*
                                   Midori A. Lowry
                                   United States Magistrate Judge


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.